ORIGINAL

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAR - 9 2006
AT_____ O'CLOCK
Lawrence K. Baerman, Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

******************************************

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: 05-CR-64 ( ) |
| | Violation: 18 U.S.C. § 371, Conspiracy to Violate the Clean Air Act and the Clean Water Act |
| v. | |
| EAST COAST CAPITAL COMPANY, LLC | |
| Defendant. | |

******************************************

## PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)

The United States of America and **EAST COAST CAPITAL COMPANY, LLC** ("**EAST COAST CAPITAL**"), a corporation organized and existing under the laws of the State of New York, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

1. **RIGHTS OF EAST COAST**. EAST COAST CAPITAL understands its rights:

    (a)    to be represented by an attorney;

    (b)    to be charged by Indictment;

    (c)    to plead not guilty to any criminal charge brought against it;

    (d)    to have a trial by jury, throughout which it would be presumed to be not guilty of the charge and the United States would have to prove every essential element

1

of the charged offense beyond a reasonable doubt for it to be found guilty;

 (e) to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

 (f) to appeal its conviction if it is found guilty at trial; and

 (g) to appeal the imposition of sentence against it.

 2. **AGREEMENT TO PLEAD GUILTY AND WAIVE RIGHTS.** EAST COAST CAPITAL waives the rights set out in Paragraph 1(b)-(f) above. EAST COAST CAPITAL also waives its right to appeal the imposition of sentence against it, so long as the sentence imposed is consistent with the recommendation in Paragraph 9 of this Plea Agreement. Pursuant to Fed. R. Crim. P. 7(b), EAST COAST CAPITAL will waive indictment and plead guilty at arraignment to a one count Information to be filed in the United States District Court for the Northern District of New York. The Information will charge EAST COAST CAPITAL with participating in a conspiracy to violate the Clean Air Act and the Clean Water Act from 2004-2005, in violation of 18 U.S.C. § 371.

 3. Pursuant to the terms of this Plea Agreement, EAST COAST CAPITAL will plead guilty to the criminal charges described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 5 below.

 4. **ELEMENTS OF THE OFFENSE.** EAST COAST CAPITAL, through its authorized representative, acknowledges that it is aware of the elements of the offenses to which it is entering a guilty plea. Specifically, if this case were to proceed to trial, the United States would have the burden of proving beyond a reasonable doubt each of the elements of a Clean Air Act and Clean Water Act conspiracy. The legal elements of the conspiracy offense of 18 U.S.C. § 371, are as follows:

 a. 1) The existence of an agreement, 2) between two or more persons, 3)

to do something the law forbids, 4) in this case, to violate the Clean Air Act, the Clean Water Act, and to commit mail fraud, 5) and the commission of an overt act in furtherance of the conspiracy.

5. **FACTUAL BASIS FOR OFFENSE CHARGED**. EAST COAST CAPITAL admits the following facts which establish its guilt beyond a reasonable doubt for the offense stated in the Information:

(a)     At all times relevant to this case Andrew Swaap has worked for EAST COAST CAPITAL as its Director of Acquisitions. Beginning in approximately May 2004, Andrew Swaap began traveling from New York City to Syracuse, NY to look at substantial amounts of commercial real estate on behalf of EAST COAST CAPITAL. It was the intention of Andrew Swaap and EAST COAST CAPITAL to purchase numerous commercial properties in Syracuse, which they considered undervalued, and to "flip them," that is, to sell them to others within a short period of time at a significant profit, including by, if necessary, providing private, short term financing to purchasers who could not otherwise obtain standard bank mortgages.

b.     On approximately June 1, 2004 a commercial real estate agent showed a building located at 243-245 East Water Street ("the building" or "the property") to Andrew Swaap. Among other areas in need of renovation, this property had substantial, deteriorating, regulated asbestos containing material, that is, asbestos insulation on pipes and a boiler located in the basement. The basement also had drums containing abandoned chemicals (dry cleaning solvents, including perchloroethylene, a toxic pollutant) left behind by a former tenant that had operated a Laundromat service there.

c.     At the same approximate time that the real estate agent showed the building to Andrew Swaap she gave to him, and subsequently faxed a second copy to him at EAST COAST CAPITAL, an environmental survey that disclosed the existence of the asbestos and containers of chemicals from the Laundromat. The survey disclosed that the

cost to remove the asbestos alone would be approximately $50,000. Based upon that survey and conversations with the real estate agent, Andrew Swaap and EAST COAST CAPITAL were well aware of the presence of the regulated asbestos containing material and the chemical contamination.

        d.      On or about August 12, 2004 EAST COAST CAPITAL, acting through Andrew Swaap, purchased the building located at 243-245 East Water Street, Syracuse New York "as is," meaning that, among other things, it was bought without the removal of the asbestos and chemical contamination. At subsequent meetings where Andrew Swaap attempted to interest a new potential buyer of the building, the buyer was advised that EAST COAST CAPITAL, through a local property manager, was going to clean up the asbestos and other contamination in the basement prior to any sale. Thus, the prospective buyer learned, the building would be worth substantially more than had these environmental contaminates not been removed.

        e.      Shortly after EAST COAST CAPITAL bought the property, Andrew Swaap directed a local property manager in Syracuse to hire individuals to have the building cleaned "top to bottom," including removing all asbestos off the pipes and boilers and disposing of containers of chemical waste in the basement. Andrew Swaap promised that if the property manager "rehabed" the building inexpensively, he (the property manager) would get some money from its sale. Andrew Swaap and EAST COAST CAPITAL clearly understood and intended that no licensed asbestos abatement company or environmental company licensed to remove toxic chemicals would be hired to perform the cleanup. Rather, the "cleanup" would be done by hiring unskilled, unlicenced workers.

        f.      During the fall 2004, the property manager hired his brother who in turn hired unemployed people off the street to remove and dispose of various materials throughout the building, including the asbestos on the pipes and boilers and chemical containers in the basement.

g.	The workers who removed the asbestos and chemical contamination had no licenses, training, education or experience that allowed any of them to perform this work safely or in accordance with law.

h.	Prior to renovating the building, including removing a regulated amount of friable asbestos, neither Andrew Swaap, EAST COAST CAPITAL, nor anyone else to his knowledge, filed a project notification with the United States Environmental Protection Agency or NYS Department of Labor, Asbestos Control Bureau. The asbestos was removed without first wetting it, it was placed into single bags dry, no labeling of any sort occurred, no containment was built, no worker wore a respirator or other personal protective equipment, no air monitoring company was hired to take samples and in no other way did compliance occur with the laws of the United States and State of New York regarding asbestos renovation projects. Most of the friable asbestos was disposed of as if it were mere trash in dumpsters located at apartment buildings in Syracuse. Similarly with regard to the Laundromat solvents (and some of the asbestos), at least portions of these materials were discharged into a sump pump in the basement of the building and thereafter drained into the sewer system and from there discharged illegally into the Onondaga County Publically Owned Treatment Works (POTW) without either a Clean Water Act permit or a similar delegated state or local permit, issued under the authority of the Clean Water Act.

i.	To pay the workers for the asbestos work, Andrew Swaap recommended that EAST COAST CAPITAL pay an invoice submitted by the property manager for approximately $2,000, which it did. Andrew Swaap and EAST COAST CAPITAL understood that this amount of money was clearly inadequate for the lawful cleanup of the friable asbestos. Swaap and EAST COAST CAPITAL took no other steps to ensure that compliance with law occurred with regard to the asbestos and solvents described above and they knew of and intended no other steps to be taken by anyone else.

5

6. **POSSIBLE MAXIMUM SENTENCE**. EAST COAST CAPITAL CAPITAL understands that the maximum penalty which may be imposed against it upon conviction for a conspiracy to violate the Clean Air Act, Clean Water Act, and to commit mail fraud, and Substantive Clean Air Act violations are fines of:

    (a)     $ 500,000 (18 U.S.C. § 3571(c)) per count; or

    (b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

    (c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, EAST COAST CAPITAL understands that:

    (a)     pursuant to 18 U.S.C. § 3663A, the Court shall order it to pay restitution to any victims of the offense;

    (b)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order EAST COAST CAPITAL to pay a special assessment of $400 upon conviction for the charged crimes; and

    (c)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years.

8. **SENTENCING GUIDELINES**. Defendant understands and acknowledges that, at sentencing, the Court is required to take account of the United States Sentencing Guidelines, together with the other sentencing goals set forth in Title 18, United States Code, Section 3553(a). Defendant understands and acknowledges that the United States Sentencing Guidelines, including Chapter Eight which provides guidance for the sentencing of corporate defendants, may be considered by the Court, except that pursuant to U.S.S.G. §§ 8C2.1 and 8C2.10, the United States Sentencing Guidelines are not applicable for purposes of determining a corporate fine. Instead, the fine is to be determined under 18 U.S.C. §§ 3553

and 3571.

9.  **FIXED SENTENCING AGREEMENT**. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), subject to the District Court's acceptance, the United States and EAST COAST CAPITAL agree that the appropriate disposition of this case shall be that EAST COAST CAPITAL pays to the United States a criminal fine of Five Hundred Thousand Dollars ($500,00.00).

(a)  EAST COAST CAPITAL understands that the Court will order it to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(b)  EAST COAST CAPITAL will be placed on a term of probation for two years.

(c)  <u>Environmental Compliance Plan</u>.  As a condition of probation, EAST COAST CAPITAL will develop, fund and implement a comprehensive Environmental Compliance Plan ("ECP") to prevent future violations, consistent with sentencing policies set forth in U.S.S.G. § 8D1.4(c). A failure to fully fund and to fully implement the ECP will constitute a violation of probation and will constitute a material breach of this plea agreement. The ECP must be developed and submitted to the United States and the Probation Office for approval within three months of the entry of the plea. EAST COAST CAPITAL shall revise and implement the ECP as deemed necessary by the United States or the Probation Office.

(d)  Expedited Sentencing. The parties agree that pursuant to Fed. R. Crim. P. 32(c)(1)(A)(ii) they will place information in the record enabling the Court to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553 without the Probation Department conducting a Pre-sentence Investigation, and further agree to jointly recommend that the Court waive the preparation of the presentence report in this matter and to sentence the defendant immediately upon the Court's acceptance of the guilty plea. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(e)  EAST COAST CAPITAL shall not seek nor take a tax deduction for any

monies paid as a fine under this plea agreement.

10. **APPLICATION OF THE AGREEMENT**. This Agreement shall bind EAST COAST CAPITAL and its successors and assigns. EAST COAST, or its successors-in-interest, if applicable, shall provide to the United States Attorney's Office and the United States Probation Office immediate notice of any name change, corporate reorganization, sale or purchase of substantial assets subject to the ECP, or similar action affecting this Agreement and the ECP. No change in name, change in corporate or individual control, corporate reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter EAST COAST's responsibilities under this Agreement. EAST COAST CAPITAL shall not engage in any action to seek to avoid the obligations and conditions set forth in this Agreement.

11. Subject to the ongoing, full, and truthful cooperation of EAST COAST CAPITAL described in Paragraph 13 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court of the fact, manner, and extent of EAST COAST CAPITAL cooperation and its commitment to prospective cooperation with the United States' investigations and prosecutions, material facts relating to EAST COAST's involvement in the charged offense, and other relevant conduct.

12. The United States and EAST COAST CAPITAL understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a) If the Court does not accept the recommended sentence (except for the expedited imposition of sentence), the United States and EAST COAST CAPITAL agree that this Plea Agreement, except for Paragraph 12(b) below, shall be rendered void.

(b) If the Court does not accept the Rule 11(c)(1)(C) sentence (except for the expedited imposition of sentence), EAST COAST CAPITAL will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If EAST COAST CAPITAL withdraws its

plea of guilty, this Plea Agreement and the guilty plea shall not be admissible against EAST COAST CAPITAL in any criminal proceeding except as otherwise provided in Fed. R. Crim. P. 11(f). EAST COAST CAPITAL agrees that, if it withdraws its guilty plea pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense to which it can be charged will be tolled for the period between the date of the signing of the Plea Agreement and the date EAST COAST CAPITAL withdrew its guilty plea or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

13. **EAST COAST CAPITAL COOPERATION**. EAST COAST CAPITAL will cooperate fully and truthfully with the United States in the prosecution of this case and in any investigation, litigation, criminal prosecution or other proceedings (hereafter Federal Proceeding) arising from or related to the subject matter about which EAST COAST CAPITAL is pleading guilty. EAST COAST CAPITAL will make all reasonable efforts to ensure that its current and former officers, employees, consultants, vendors and experts cooperate with the United States and truthfully disclose all information about their activities and those of others relating to any criminal environmental matter about which assistance is requested. The ongoing, full, and truthful cooperation of EAST COAST CAPITAL shall include, but not be limited to:

(a) producing to the United States all documents, information, and other materials, wherever located (including documents qualified as privileged under the laws of the United States or protected under the work product doctrine), in the possession, custody, or control of EAST COAST CAPITAL, requested by the United States in connection with any Federal Proceeding;

(b) securing the ongoing, full, and truthful cooperation of any of its officers, employees, consultants, and experts, including making such persons available in the United States for interviews and the provision of testimony in grand jury, trial, and other judicial

proceedings in connection with any Federal Proceeding. EAST COAST CAPITAL will advise those persons identified in this paragraph that they are encouraged to cooperate; cooperation includes providing information to the Government, being interviewed by Government agents or attorneys, and testifying in official proceedings. EAST COAST CAPITAL will grant liberal leave if necessary at its expense to facilitate cooperation with the Government;

(c)   As a condition of its cooperation pursuant to this plea agreement, EAST COAST CAPITAL will withdraw from any and all joint defense agreements previously entered into with any individual or company concerning the criminal investigation of its asbestos activities.

(d)   During the period of probation, EAST COAST CAPITAL shall provide to government agents full access to its facility and employees, including access to business records related to asbestos activities.

(e)   No EAST COAST CAPITAL employees will be fired, demoted, reassigned or otherwise suffer a reduction in pay or other benefits because of their truthful cooperation with the United States with respect to the alleged criminal violations under investigation.

14.   **GOVERNMENT'S AGREEMENT**. Upon acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 13 of this Plea Agreement, the United States agrees that it will not bring further criminal charges against EAST COAST CAPITAL for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of the Clean Air Act and Clean Water Act conspiracy involving the illegal abatement of asbestos and pollutants as described in the Information and plea agreement. The nonprosecution terms of this paragraph do not apply to civil or administrative matters of any kind, to any violation of the federal tax laws, or to any crime of violence.

15.   EAST COAST CAPITAL understands that it may be subject to civil or

administrative action by federal or state agencies, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of EAST COAST CAPITAL as a matter for that agency to consider before determining what administrative action, if any, to take.

16. **REPRESENTATION BY COUNSEL**. EAST COAST CAPITAL has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. EAST COAST CAPITAL has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

17. **VOLUNTARY PLEA**. EAST COAST CAPITAL's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to EAST COAST CAPITAL as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

18. **VIOLATION OF PLEA AGREEMENT**. EAST COAST CAPITAL, through its authorized representatives, recognizes that the government has agreed not to prosecute all of the criminal conduct established by the evidence as committed by EAST COAST CAPITAL solely because of the promises made by EAST COAST CAPITAL in this Agreement. If EAST COAST CAPITAL breaches this Agreement, or if EAST COAST CAPITAL withdraws its guilty plea pursuant to paragraph 12 of this Agreement, the United States retains the right to present to the Grand Jury for Indictment, all of the criminal

violations established by the evidence. If the actions of EAST COAST CAPITAL or any of its agents and/or employees breaches this Agreement, EAST COAST CAPITAL will not be able to withdraw its guilty plea, and the United States will be relieved of all of its obligations under this Agreement. If, as a result of a breach of the Agreement, the United States elects to pursue any charge that was not filed as a result of this Agreement, EAST COAST CAPITAL expressly waives all defenses based upon the statute of limitations and pre-indictment delay, except to the extent that such defenses existed as of the date of the signing of this Agreement and subject to paragraph 19 below.

19. EAST COAST CAPITAL understands and agrees that in any further prosecution of it resulting from the release of the United States from its obligations under this Plea Agreement, because of EAST COAST CAPITAL's violation of the Plea Agreement, any documents, statements, information, testimony, or evidence provided by it or current or former directors, officers, or employees of it to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it in any such further prosecution. In addition, EAST COAST CAPITAL unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

20. **CORPORATE AUTHORIZATION.** EAST COAST CAPITAL states that it is authorized to enter into this Agreement. At the time of signing by EAST COAST CAPITAL's representatives, EAST COAST CAPITAL shall provide the United States with a written statement in the form of a corporate resolution certifying that EAST COAST CAPITAL is authorized to enter into and comply with all of the terms of this Agreement. The corporate resolution shall certify that EAST COAST CAPITAL's Board of Directors has authorized the undersigned representatives to take these actions and that all corporate formalities for such authorizations have been observed. EAST COAST CAPITAL agrees that the pleas of guilty will be entered by EAST COAST CAPITAL through its attorney, and

that he is authorized to enter pleas of guilty on EAST COAST's behalf. By entering these guilty pleas, EAST COAST CAPITAL hereby waives all objections to the form of the charging document, admits that it is in fact guilty of the offense as set forth in the Information, and that the Factual Statement set forth in this Agreement is a true and accurate statement of EAST COAST CAPITAL's criminal conduct and that it provides a sufficient basis for EAST COAST CAPITAL's pleas of guilty to the offense charged in the Information.

21. **WAIVER OF APPEAL.** EAST COAST CAPITAL, through its authorized representatives, is aware that 18 U.S.C. § 3742 gives the right to appeal the sentence to be imposed, and that other federal statutes give EAST COAST CAPITAL the right to appeal other aspects of the conviction. In consideration of the Agreement with the United States as set forth herein, EAST COAST CAPITAL knowingly and voluntarily agrees to waive the following rights:

   a. The right, conferred by 18 U.S.C. § 3742, to appeal the sentence imposed by the Court for the conviction of these offenses, including restitution;

   b. The right to appeal any aspect of EAST COAST CAPITAL's conviction, including any pre-charge or pre-trial dispositions of motions, if any, or other issues; and

   c. The right to bring any collateral attack against EAST COAST CAPITAL's conviction or sentence, except as it may relate to the effectiveness of legal representation.

22. **ENTIRETY OF AGREEMENT.** This Plea Agreement constitutes the entire agreement between the United States and EAST COAST CAPITAL concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and EAST COAST CAPITAL.

EAST COAST CAPITAL

By: /s/ Steven Alderman
Steven Alderman, Esq.
BAR ROLL NO. 501871

GLENN T. SUDDABY
UNITED STATES ATTORNEY

By: /s/ Craig A. Benedict
Craig A. Benedict
Assistant U.S. Attorney
Bar Roll No. 101130